No. 25-4312

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PEDRO VASQUEZ PERDOMO, *et al.*,

*Plaintiffs-Appellees*,

vs.

KRISTI NOEM, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court for the Central
District of California, Case No. 2:25-cv-05605-MEMF-SP
The Hon. Maame Ewusi-Mensah Frimpong

## PLAINTIFFS-APPELLEES' OPPOSITION TO MOTION FOR STAY PENDING APPEAL

Mohammad K. Tajsar
Eva Bitrán
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5200

Anne Lai
UC IRVINE IMMIGRANT AND RACIAL
JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Telephone: (949) 824-9894

Jacob S. Kreilkamp
Sara H. Worth
Paul E. Martin
Henry D. Shreffler
MUNGER, TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071
Telephone: (213) 683-9100

Elaine J. Goldenberg
Jeremy S. Kreisberg
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW Suite 500E
Washington, D.C. 20001
(202) 220-1100

*Counsel for Plaintiffs-Appellees*
*Additional counsel listed on next page*

Mark Rosenbaum
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for Plaintiffs-Appellees*

Matthew J. Craig
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (212) 763-0883

*Counsel for Plaintiff-Appellee CHIRLA*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................5

I.    Defendants Have Not Shown That They Are Likely to Succeed on the Merits. .............................................................................................6

    A.    Plaintiffs Have Standing ..................................................6

    B.    Defendants' Fourth Amendment Arguments Misread the Injunction and Settled Law. ...............................................12

    C.    The District Court Properly Tailored Relief. .....................18

II.    The Balance of Equities Does Not Favor a Stay. .........................22

CONCLUSION ..........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alderman v. United States*,
   394 U.S. 165 (1969)..................................................................12

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ...................................................2, 7

*Bennett v. Isagenix Int'l LLC*,
   118 F.4th 1120 (9th Cir. 2024) ...............................................11

*Black Lives Matter v. City of Seattle*,
   466 F. Supp. 3d 1206 (W.D. Wash. 2020) ...........................16

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)..................................................................24

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)..........................................................6, 7, 8, 9

*Coal. on Homelessness v. San Francisco*,
   2024 WL 3325655 (9th Cir. July 8, 2024) .........................16

*Coal. on Homelessness v. San Francisco*,
   758 F. Supp. 3d 1102 (N.D. Cal. 2024)..............................12

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
   92 F.3d 1486 (9th Cir. 1996) ........................................3, 19, 20, 21

*East Bay Sanctuary Covenant v. Trump.*,
   932 F.3d 742 (9th Cir. 2018) ...............................................24

*Egbert v. Boule*,
   596 U.S. 482 (2022)................................................................22

*Gonzalez v. U.S. ICE*,
   975 F.3d 788 (9th Cir. 2020) ...............................................18

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Gregory v. Litton Sys.*,
472 F.2d 631 (9th Cir. 1972) ..................................................................19

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) (en banc) ...................................7, 8, 10

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)...............................................................................11

*INS v. Lopez-Mendoza*,
468 U.S. 1032 (1984)..............................................................................22

*Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*,
389 U.S. 64 (1967).................................................................................16

*Kariye v. Mayorkas*,
2024 WL 4403870 (9th Cir. Oct. 4, 2024) .........................................7

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ............................................................7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................6

*Mabe v. San Bernardino Cnty.*,
237 F.3d 1101 (9th Cir. 2001) ...........................................................12

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010) ..............................................................7

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ................................................ 7, passim

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ...........................................................18

*Microsoft v. U.S. DOJ*,
233 F. Supp. 3d 887 (W.D. Wash. 2017) ..........................................12

v

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Nken v. Holder*,
   556 U.S. 418 (2009)..................................................................5, 21

*Ortega-Melendres v. Arpaio*,
   836 F. Supp. 2d 959 (D. Ariz. 2011), *aff'd*, 695 F.3d 990 (9th Cir.
   2012) ...................................................................................16

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ..............................................17

*Perez Cruz v. Barr*,
   926 F.3d 1128 (9th Cir. 2019) ......................................14, 16

*Rakas v. Illinois*,
   439 U.S. 128 (1978)..............................................................12

*Sanchez v. Sessions*,
   904 F.3d 643 (9th Cir. 2018) ..............................................14

*Schmidt v. Lessard*,
   414 U.S. 473 (1974)..............................................................17

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
   108 F.4th 1128 (9th Cir. 2024) ...........................................12

*Suda v. U.S. Customs & Border Prot.*,
   2020 WL 919574 (D. Mont. Feb. 26, 2020)........................14

*Trump v. CASA*,
   2025 WL 1773631 (U.S. June 27, 2025)........................ 2, passim

*United States v. Brignoni-Ponce*,
   422 U.S. 873 (1975).........................................................13, 14

*United States v. Freeman*,
   914 F.3d 337 (5th Cir. 2019) ..............................................14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States v. Manzo-Jurado*,
   457 F.3d 928 (9th Cir. 2006) ..............................................................13, 14, 16

*United States v. Mitchell*,
   971 F.3d 993 (9th Cir. 2020) ...............................................................3

*United States v. Montero-Camargo*,
   208 F.3d 1122 (9th Cir. 2000) (en banc) ......................................14, 17

*United States v. Valdes-Vega*,
   738 F.3d 1074 (9th Cir. 2013) (en banc) ........................................13

*United States v. Washington*,
   387 F.3d 1060 (9th Cir. 2004) ..........................................................12

*Winter v. NRDC*,
   555 U.S. 7 (2008)..............................................................................22

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1983) ......................................................3, 22

**FEDERAL RULES**

Fed. R. App. P. 8..................................................................................5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. IV ................................................................. 1, passim

U.S. Const. amend. V.....................................................................4, 10

**OTHER AUTHORITIES**

NBC News, *DHS Secretary Kristi Noem calls California judge an
   'idiot' over immigration detention ruling* (July 12, 2025) ....................8

## INTRODUCTION

The district court reviewed a "mountain of evidence" documenting the government's practice of violating the Fourth Amendment during "roving" immigration patrols. ECF 87 ("Order") 2. The government rebutted none of it. The court then did what federal courts are regularly charged with doing: it applied controlling precedent to the facts and entered a temporary order to protect Plaintiffs' rights. That order is narrow. It does not prohibit immigration enforcement or patrols. It simply directs the government to stop detaining people on the streets of Southern California, without particularized suspicion, based "solely" on their apparent race or ethnicity, Spanish language or accent, location (such as a "bus stop, car wash, tow yard, day laborer pick up site, [or] agricultural site"), and occupation—as this Court's precedents require. *Id.* at 50. Having failed to persuade the district court to lift that careful order, Defendants now ask this Court to stay it pending appeal. DE 11 ("Mot."). Their motion is based on a misreading of the order and applicable law and identifies no harm that could justify the extraordinary relief they seek. The motion therefore should be denied.

First, Defendants argue that neither the individual nor organizational Plaintiffs—including individual Plaintiff Gavidia, a U.S. citizen who was ordered to stop on the sidewalk, slammed against a metal gate, and interrogated solely because of his race and presence at a tow yard—have standing to obtain injunctive relief.

1

But Defendants ignore decades of precedent holding that a plaintiff can show a likelihood of recurrent injury sufficient for standing where the harm suffered is part of a "pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (citation omitted). A pattern of officially sanctioned, lawless behavior is precisely what the district court found here. Order 44-45 & n.33.

Second, Defendants take issue with the terms of the district court's order, but they misread those terms. Defendants insist (Mot.14-15) that the order bars *any* reliance on race, language, location, or occupation to form reasonable suspicion. That is simply not so, as the district court has repeatedly explained; the order merely bars *sole* reliance on those facts, alone or in combination. *See* ECF 90, Hr. Tr. 42:18-22; Order 46; ECF 108 ("Stay Order") 6. Thus, rather than departing from the totality-of-the-circumstances Fourth Amendment test, the district court's order *adheres* to that test. If accepted, Defendants' contrary argument would upend this Court's settled case law and authorize unrestrained demographic profiling.

Defendants also argue that the order contravenes *Trump v. CASA*, 2025 WL 1773631 (U.S. June 27, 2025), but the injunction in this case is not universal. Its tailored geographic scope, which is limited to a single judicial District, is "necessary" to afford complete relief to Plaintiffs themselves. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996).

2

Third, as the district court concluded, Defendants have shown no irreparable harm that could justify the "extraordinary remedy" of a stay. *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020). If Defendants are *not* relying solely on broad profiles to form reasonable suspicion, then they will have little difficulty obeying the order. If they *are* engaging in such a pattern of unlawful detentive stops, as the district court found, then the order is necessary. In any event, Defendants are not harmed "in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).

Plaintiffs' claim is simple. They contend that masked federal agents brandishing weapons cannot command people going about their daily lives to stop and prove their lawful presence solely because of their skin color, accent, where they happen to be, and the type of work they do. Defendants contend otherwise. The district court agreed with Plaintiffs and applied settled law to protect their rights. This Court should leave that order in place.

## BACKGROUND

In May 2025, the government dispatched federal law-enforcement personnel to major urban centers to conduct "roving patrols" for undocumented immigrants. *See* ECF 16 ¶¶ 6, 36 n.6. Rather than sticking to lists of specific individuals targeted for apprehension, officers and agents were ordered to "turn the creativity knob up to 11" to meet new arrest quotas, with instructions to round up people at 7-Eleven

3

stores and Home Depots that are frequented daily by thousands of U.S. citizens and lawfully present immigrants. ECF 45 at 14 nn.51 & 52.

In June, Defendants made Los Angeles their proving ground. Agents and officers began raiding businesses and detaining people based not on individualized suspicion—as the law requires—but on broad demographic profiles. Order 6-7, 9-11, 39-40. Predictably, Defendants' illegal dragnet has ensnared U.S. citizens and lawfully present individuals, some of whom now carry passports to "protect[]" against further unconstitutional seizures. ECF 45-21 ¶ 7.

On June 20, three Plaintiffs sued to protect their Fourth and Fifth Amendment rights. ECF 1. On July 2, they amended their complaint to join additional Plaintiffs and add claims. ECF 16. Plaintiffs then moved for a TRO on the Fourth Amendment claim, supporting that motion with seventeen declarations and numerous articles documenting Defendants' unlawful practice. ECF 45. Defendants, in opposition, insisted that "none of this [was] actually happening," Order 2, and that even if it was, it was all above board, *id*. at 42-44 & n.31.

Following a hearing, the district court issued a 52-page order concluding that Plaintiffs had standing, were likely to prevail on the merits, and would face irreparable harm absent interim relief. On that basis, the court temporarily enjoined the government from continuing its unconstitutional practices in the Central District of California, where Plaintiffs live and work. *See* Order 49-52. Specifically, the

court enjoined Defendants from relying "solely" on race, Spanish language or accent, location, and occupation to support reasonable suspicion for detentive stops. *Id*. 50. The court has set a preliminary-injunction hearing for September 24. ECF 108.[1]

On July 14, Defendants sought a stay of the TRO in this Court in violation of Rule 8, *see* DE 9, then asked the district court for that relief, ECF 94.[2] That court denied the stay based on lack of any irreparable harm to Defendants. ECF 108. Defendants then renewed their stay request in this Court. DE 11.

## ARGUMENT

In deciding whether a stay is warranted, this Court considers (1) whether the movants have made a "strong showing" that they are likely to succeed on the merits of their appeal; (2) whether the movants will be irreparably injured absent a stay; (3) whether issuance of a stay will "substantially injure" the opposing parties, and (4) whether a stay is in the "public interest." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Defendants have failed to make a strong showing of success on the merits and have not established irreparable injury—either of which is enough to deny their motion. Issuance of a stay also would substantially injure Plaintiffs and the public interest.

---

[1] Plaintiffs requested a preliminary-injunction hearing scheduled in early August; Defendants requested that the hearing be delayed until October 9. *See* ECF 104.

[2] Defendants have sought *no* stay of the court's order that Defendants provide arrestees with access to counsel. *See* Order 49.

## I.    Defendants Have Not Shown That They Are Likely to Succeed on the Merits.

Defendants make three principal arguments on the merits:  (1) Plaintiffs lack standing; (2) the injunction "is contrary to bedrock Fourth Amendment law"; and (3) the district court exceeded its authority under *Trump v. CASA*, 2025 WL 1773631 (U.S. June 27, 2025).  Each is wrong.

### A.    Plaintiffs Have Standing.

Plaintiffs are individuals and organizations with members who have been seized without reasonable suspicion and who live and work under constant threat that they will be so seized in the future.  Defendants' argument that Plaintiffs have no recourse in the federal courts on standing grounds is incorrect.

**1.**  As the district court concluded, Plaintiffs have standing to seek injunctive relief because they satisfy the standard set forth in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  *See id.* at 109; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In *Lyons*, the Supreme Court held that although past "exposure to illegal conduct" alone is insufficient to confer standing for injunctive relief, a plaintiff who "is realistically threatened by a repetition" of the violation has standing.  461 U.S. at 109.  The plaintiff in that case was placed in an illegal chokehold during a traffic stop and sought an injunction against chokeholds where an officer is not threatened by death or serious harm.  *See id.* at 97-99.  But although he claimed that police

6

routinely applied chokeholds, he failed to allege that the City had authorized chokeholds absent resistance by the arrestee, and there was no reason to believe that he would "illegally resist arrest" in the future. *See id.* at 105-106, 110. The Court therefore held that he lacked standing. *See id.* at 109.

This Court has "enumerated" several ways in which plaintiffs can satisfy the *Lyons* standard. *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010). One is to demonstrate that the harm "is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'" *Armstrong*, 275 F.3d at 861 (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)); *see Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (written policy is not required). The idea is simple: "where the defendants have repeatedly engaged in the injurious acts in the past" and those acts are authorized by officials, "there is a sufficient possibility" that the defendants "will engage in them in the near future to satisfy the 'realistic repetition' requirement." *Armstrong*, 275 F.3d at 861.[3]

---

[3] Defendants are wrong that *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (en banc), "narrow[s]" *LaDuke*. Mot.11. *Hodgers-Durgin* applies *LaDuke*—and this Court applied the same rule just last year. *See Kariye v. Mayorkas*, 2024 WL 4403870, at *2 (9th Cir. Oct. 4, 2024).

7

The district court applied that rule and correctly determined that Plaintiffs have shown a realistic threat of future injury.[4]  The court found, noting a "plethora of statements" by officials "suggest[ing] approval or authorization" of Defendants' unconstitutional tactics, that Defendants have engaged in a pattern of officially sanctioned unlawful behavior.  Order 35, 45 n.33.  Defendants have not argued that the district court "clearly err[ed]" in making that finding, *Melendres*, 695 F.3d at 999—nor could they.  Indeed, the Secretary of Homeland Security—a Defendant and movant—has since confirmed the ongoing threat to Plaintiffs by proclaiming that "none of our operations are going to change."  NBC News, *DHS Secretary Kristi Noem calls California judge an 'idiot' over immigration detention ruling* (July 12, 2025).[5]

**2.**  Defendants insist that this case is "squarely controlled" by *Lyons*, Mot.7, but that is wrong for multiple reasons.

First, unlike Lyons, Plaintiffs cannot change their behavior to avoid being subject to Defendants' unlawful practice.  As this Court has explained, Lyons could avoid a realistic threat of a future chokehold simply by not "engaging in illegal conduct."  *Hodgers-Durgin*, 199 F.3d at 1041.  In contrast, the record here

---

[4] The court focused on Plaintiff Gavidia, because a single Plaintiff with standing is enough for the action to proceed, but also stated that "the individual plaintiffs here have adequately alleged facts that give rise to standing."  Order 34.

[5] *Available at* https://www.youtube.com/shorts/8iuX7hhiJMc.

establishes that Plaintiffs are being unlawfully seized while going about their daily lives. *See, e.g.*, ECF 45-9 (U.S. citizen seized standing on sidewalk); ECF 45-4 (U.S. citizen seized at car wash); ECF 45-1 (plaintiff and co-workers seized at bus stop).

Second, this case has what *Lyons* lacked: plaintiffs immediately threatened by a pattern of officially authorized conduct. This Court has ruled that even where "the likelihood of a future stop of a particular individual plaintiff may not be 'high,'" a plaintiff can show that "future injury [is] nevertheless 'sufficiently likely'" when that kind of pattern exists, because the official authorization will almost certainly lead to additional, similar government action. *Melendres*, 695 F.3d at 998. That is the very showing that Plaintiffs made to the district court, which makes the continuing threat here unmistakable. For instance, Plaintiff Viramontes's car wash has been raided multiple times. ECF 45-4. On the day federal agents illegally detained him, they raided the car wash twice, and the second set of agents seemed unaware of the first raid. ECF 45-5 ¶ 11. Three different agents questioned his co-manager, who is also a U.S. citizen. *Id.* ¶ 7. The agents' practice was not to check whether someone had been previously detained, but instead to come "out of the vehicles and start[] grabbing" people. ECF 45-4 ¶ 5. Plaintiff Gavidia, who was detained for no evident reason other than his appearance outside a tow yard, ECF 45-9 ¶ 12, also has every reason to fear being stopped again. All the conditions for

his seizure remain: he will continue to visit a tow yard in a predominantly Latine area, work on his car, and appear as he does. Order 34.

For similar reasons, this case is not like *Hodgers-Durgin*, in which the plaintiffs had not "demonstrated a sufficient likelihood of injury to warrant equitable relief." 193 F.3d at 1044; *see* Mot.10. In *Hodgers-Durgin*, which concerned allegedly unlawful stops by Border Patrol, each of the individual plaintiffs had been "stopped only once in 10 years," and there was no finding of an officially authorized pattern of unlawful behavior. 193 F.3d at 1044. Here, the stops have been frequent and the district court found just such a pattern. *See supra* at 8.

**3.** Any question as to individual Plaintiffs' standing (and there is none) is rendered academic by the standing of the organizational Plaintiffs.

The district court did not directly rule on the organizational Plaintiffs' standing, but the court did correctly conclude that "the organizational plaintiffs and their members have experienced significant harm" and "are likely to suffer irreparable harm." Order 46.[6] That conclusion, which is firmly grounded in the record, suffices to establish that there is a realistic threat that Plaintiffs' members

---

[6] The district court also found in the part of its order discussing the Fifth Amendment TRO that CHIRLA has associational standing to assert claims based on its members' reasonable fear of "being stopped, arrested, detained, and deported." Order 24.

10

will be illegally seized again.[7] For instance, one of UFW's members was seized for no evident reason other than his Latino appearance and status as a day laborer. ECF 45-8 ¶¶ 27-28; *see* ECF 45-8 ¶¶ 19, 32. The CLEAN worker center, a member of LAWCN, pointed to a member who was working at a car wash when an armed agent "grabbed" him and asked for his "papers," despite not detaining two light-skinned individuals at the same worksite, ECF 45-10 ¶¶ 6-7, 11-12, as well as to numerous other members who have been stopped and fear being stopped again, ECF 45-13 ¶ 13. CHIRLA's membership consists of predominantly Latine people, including many day laborers, carwash workers, and street vendors, who have upended their daily routines after encountering immigration agents. ECF 38-9 ¶¶ 24-28; *see* ECF 38-9 ¶¶ 24-26. Those organizations thus have demonstrated standing by showing that future seizures affecting some of their many members are likely.

Defendants respond that the organizational Plaintiffs cannot vindicate their members' Fourth Amendment rights (Mot.9-10), but there is no Fourth Amendment exception to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977). Defendants misread their cited authorities, which primarily concern plaintiffs' ability to exclude evidence under the Fourth Amendment when they were

---

[7] *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1125 (9th Cir. 2024) (this Court may affirm "on any ground supported by the record").

11

not themselves subject to the challenged search or seizure—not whether those plaintiffs had established an injury sufficient to confer standing under Article III.[8] The law is clear:  UFW, LAWCN, and CHIRLA may obtain injunctive relief to safeguard their members' Fourth Amendment rights.  *See, e.g.*, *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1143 (9th Cir. 2024); *Coal. on Homelessness v. San Francisco*, 758 F. Supp. 3d 1102, 1125 (N.D. Cal. 2024).

### B.    Defendants' Fourth Amendment Arguments Misread the Injunction and Settled Law.

The district court considered "hundreds of pages of documentary evidence and video evidence," ECF 101 at 8, and found based on that evidence that (1) Defendants are conducting seizures when agents and officers arrive with a show of authority, issue verbal commands, and physically grab individuals before questioning them, *see* Order 37; *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004), and (2) those seizures are not supported by reasonable suspicion because they rely solely on one or more of the four factors listed in the order, which amount to broad demographic profiling, Order 37-41.  Defendants failed to rebut

---

[8] *See Alderman v. United States*, 394 U.S. 165, 172 (1969) (person not subject to unlawful search cannot suppress resulting evidence); *Rakas v. Illinois*, 439 U.S. 128, 133 (1978) (similar); *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (similar); *see also Microsoft v. U.S. DOJ*, 233 F. Supp. 3d 887, 913-14 (W.D. Wash. 2017) (rejecting third-party standing, not associational standing).

any of that evidence.[9]  The court then granted a temporary injunction tailored to the record and consistent with controlling law.  Defendants' protests are based on a misreading of that injunction's actual terms.

**1.**  The legal framework governing interior immigration enforcement is clear. Immigration agents may not detain a person without "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the persons stopped are noncitizens "who may be illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).  Reasonable suspicion requires something more than broad demographic profiling and cannot be based solely on "generalizations that, if accepted, would cast suspicion on large segments of the lawabiding population."  *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006); *cf. United States v. Valdes-Vega*, 738 F.3d 1074, 1080-81 (9th Cir. 2013) (en banc) ("driving a Ford truck" could "describe many people").

Based on those principles, this Court has held that the four factors at issue in this case—apparent race or ethnicity, Spanish language or accent, location, and/or occupation—are not enough to give rise to reasonable suspicion.  Apparent race or ethnicity cannot itself establish reasonable suspicion—at least in areas like the

---

[9] Defendants claim they did not have a fair opportunity to respond, but they had nearly a week to explain the stops in the record.  Despite far greater access to documents and witnesses than Plaintiffs, Defendants provided no explanation for *any* of the stops.  Order 41; *id*. at 23-26.

13

Central District with a substantial non-White population. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1135 (9th Cir. 2000) (en banc); *Sanchez v. Sessions*, 904 F.3d 643, 650 (9th Cir. 2018); *see also Brignoni-Ponce*, 422 U.S. at 886 (perceived Mexican ancestry does not justify a detentive stop). The government also may not detain people solely because of their occupation, *see Perez Cruz v. Barr*, 926 F.3d 1128, 1138 (9th Cir. 2019) (mere presence at worksite thought to employ undocumented immigrants does not establish reasonable suspicion for a *particular* worker); their presence at a "location or route frequented by illegal immigrants, but also by many legal residents," *Manzo-Jurado*, 457 F.3d at 936; their "appearance as a work crew," *id.* at 937-38; or the fact that they speak Spanish, *id.* at 936-37; *see Suda v. United States Customs & Border Prot.*, 2020 WL 919574, at *5 (D. Mont. Feb. 26, 2020). Those factors are only "marginally relevant" to the reasonable-suspicion analysis and thus cannot justify a stop without "additional information distinguishing any group member from an ordinary, lawful immigrant." *Manzo-Jurado*, 457 F.3d at 936, 937-40 (finding location, appearance, and speaking Spanish insufficient for reasonable suspicion).

In light of that clear precedent, the district court correctly held that Defendants cannot detain people based *solely* on the four factors discussed in the order, either alone or in combination. Order 39. Millions of legal residents of Southern California satisfy one or more of those factors. *See id.*; *cf. United States v. Freeman*,

14

914 F.3d 337, 347 (5th Cir. 2019) (cannot be correct that "virtually anyone who . . . turned right onto FM 2050, a public road, would be subject to being stopped").

The district court also properly applied the law to the facts of this case. It correctly determined, based on an extensive record, that Defendants are relying solely on one or more broadly applicable factors and seizing people—including Plaintiffs—without reasonable suspicion. Order 39-41. Defendants failed to produce *any* evidence at the TRO stage that they based their detentions of Plaintiffs on individualized suspicion. Order 41.

**2.** Defendants' contrary arguments are unavailing.

As to the facts, Defendants submitted a new declaration with their stay motion in an effort to defend the seizures of Plaintiffs Vasquez Perdomo, Osorto, and Molina. But that declaration states only that the detentions of each of those Plaintiffs "arose or were the result of a targeted enforcement action at a particular location where past surveillance and intelligence had confirmed that the target or individuals associated with him were observed to have recruited illegal aliens to work on landscaping jobs." ECF 94-1 ¶ 6. The declaration does not refute the challenged policy: it says nothing about the Plaintiffs themselves, and it omits that the "location" in question was a *public bus stop* in Pasadena. Order 43. It cannot be that a non-White, Spanish-speaking person's mere presence at a bus stop—where someone else, associated with different people who lacked legal status, was present

15

at an earlier time—can justify a deprivation of liberty.  And, indeed, that is not the law.  *See Perez Cruz*, 926 F.3d at 1138; *Manzo-Jurado*, 457 F.3d at 936.

Defendants also contend that the district court's order is too broad, because it "simply recapitulates . . . basic Fourth Amendment principles," Mot.13, and also too specific, because it supposedly gets those principles wrong.  Mot.14-16.  Both of those contentions are incorrect.

First, the order is not an overly broad "follow the law" injunction.  Order 33-34.  Like prior injunctions upheld by this Court in the Fourth Amendment context, the order does more than simply direct Defendants to obey the Constitution.  *See Coal. on Homelessness v. San Francisco*, 2024 WL 3325655, at *1 (9th Cir. July 8, 2024); *Ortega-Melendres v. Arpaio,* 836 F. Supp. 2d 959, 994 (D. Ariz. 2011), *aff'd*, 695 F.3d 990 (9th Cir. 2012).  Instead, the order specifies the precise illegal behavior that is enjoined by barring reliance on the four factors, alone or together, as the sole basis for a seizure.  *See, e.g.*, *Black Lives Matter v. City of Seattle*, 466 F. Supp. 3d 1206, 1216 (W.D. Wash. 2020) (restricting government's use of specified munitions).  Defendants' inapposite authorities simply affirm that an injunction must specify the unlawful behavior to be stopped[10]—which is precisely what the order does.

---

[10] *See Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 74 (1967) (order to comply with an arbitrator's award did not explain how party

Second, the order is not too prescriptive, because—contrary to Defendants' argument—it does not "bar[] the government from considering the listed factors." Mot.15. Rather, it bars "sole[]" reliance on them. Order 50; *see* Order 46; Stay Order 6. Defendants may pursue targeted arrests, appear at a location of interest to attempt voluntary questioning, or even detain a person based on the four enumerated factors *in combination with other*, individualized factors if that analysis gives rise to reasonable suspicion.[11] Defendants' speculation that the order would prevent them from "acting on a tip that identifies" an arrest target by reference to the target's "ethnicity" is therefore plainly incorrect. Mot.15. In that circumstance, the government would not be relying *solely* on ethnicity; it would be relying on information identifying "the suspected perpetrator of a specific offense . . . as having such an appearance." *Montero-Camargo*, 208 F.3d at 1134 n.22.

Even when they acknowledge the possibility that the order means what it says, Mot.16, Defendants fail to engage with the binding precedent on which the district

---

enjoined was out of compliance); *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("defendants are simply told not to enforce 'the present Wisconsin scheme'"); *see also Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014) (in a prison-conditions class action, plaintiffs should describe injunction "more specific than a bare injunction to follow the law").

[11] The order enjoins sole reliance on the four factors "except as permitted by law," Mot.14, to address situations not at issue in this case—for instance, enforcement at the border or at checkpoints (where reasonable suspicion is not required for a detention). That language does not undermine the clarity of the order, which is directed at the unlawful conduct challenged by Plaintiffs.

court relied, which holds that broad demographic profiles cannot, without more, support reasonable suspicion. *See supra* at 13-14. Defendants intone that they must be able to consider the totality of the circumstances, Mot.16, in determining reasonable suspicion, but as the district court found, it is *Defendants* who have departed from that test in favor of sweeping demographic assumptions. There is nothing improper about the district court, in response to the extensive record here, requiring that detentions be based on *particularized* facts that go beyond the four factors. *See, e.g.*, *Gonzalez v. U.S. Immigr. & Customs Enforcement*, 975 F.3d 788, 819-23 (9th Cir. 2020) (injunction may be appropriate if Fourth Amendment standard not met); *Melendres*, 695 F.3d at 1001-02 (affirming injunction based on totality-of-the-circumstances analysis).

## C. The District Court Properly Tailored Relief.

A district court enjoys "broad discretion in fashioning" injunctive relief. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015). The order below—based on detailed factual findings regarding a "pattern of conduct" throughout the Central District, beyond which the TRO does not extend, Order 45 n.33—is not an abuse of that discretion and should not be disturbed pending appeal.

Contrary to Defendants' argument, the injunction is not overbroad simply because it benefits nonparties. It is well settled that an injunction may benefit nonparties if "such breadth is necessary to give prevailing parties the relief to which

18

they are entitled." *Easyriders*, 92 F.3d at 1501-02; *see Gregory v. Litton Sys.*, 472 F.2d 631, 633-34 (9th Cir. 1972).

Far from undermining that legal rule, the Supreme Court's recent decision in *Trump v. CASA*, 2025 WL 1773631 (U.S. June 27, 2025), reinforces it. *See* Order 30 n.21. In *CASA*, the Court limited nationwide injunctions against enforcement of an executive order on birthright citizenship, but "only to the extent that the injunctions [were] broader than necessary to provide complete relief" to the parties. 2025 WL 1773631, at *15. The Court recognized that there is nothing wrong with injunctive relief that incidentally protects nonparties' constitutional rights in order to remedy harm to the parties. *Id.* at *11-12.

Consistent with that precedent, the district court extended the TRO here no further than "necessary to provide complete relief," 2025 WL 1773631, at *15, to the named Plaintiffs. Order 36. The court analogized this case to *Easyriders*, in which this Court upheld a statewide injunction where the unconstitutional conduct at issue—citing motorcyclists for helmet violations without probable cause—occurred throughout California and "plaintiffs would not receive the complete relief to which they are entitled without statewide application." 92 F.3d at 1502. The Court concluded there that a narrower injunction was insufficiently protective because it was "unlikely that law enforcement officials who were not restricted by an injunction governing their treatment of all motorcyclists would inquire before

19

citation into whether a motorcyclist was among the named plaintiffs or a member of Easyriders." *Id.*

So too here. As the district court correctly explained, "it would be a fantasy to expect that law enforcement could and would inquire whether a given individual was among the named Stop/Arrest Plaintiffs . . . before proceeding with a seizure." Order 36. The roving patrols of agents and officers that are aggressively stopping individuals based *solely* on one or more of the four factors are highly unlikely to pause to make that inquiry. For example, Plaintiff Gavidia was illegally seized *before* officers looked at his ID. *See* ECF 45-9 ¶¶ 9-11; *see also* ECF 45 at 10.[12] Further, because individual Plaintiffs reside, work, and move throughout the District, *e.g.*, ECF 45-1 ¶ 3; ECF 45-4 ¶¶ 2-4; ECF 45-9 ¶¶ 1-6, 13, a more geographically limited injunction would not provide them with sufficient relief.

The TRO also is properly tailored to provide relief to the organizational Plaintiffs. CHIRLA, headquartered in Los Angeles, has "50,000 members across California." ECF 38-9 ¶ 4. Masked, heavily armed groups of officers approaching individuals based on broad profiles are no more likely to begin by "inquir[ing] . . . into whether" such individuals are "member[s]" of CHIRLA, *Easyriders*, 92 F.3d at

---

[12] In that regard, this case is very different than *CASA*. The federal government knows to whom it "issue[s] . . . documentation of citizenship," 2025 WL 1773631, at *4, whereas here individualized compliance with an injunction through targeted inquiries about Plaintiffs' identities is "unlikely," 92 F.3d at 1502; *see* Order 36.

1491, than they are to begin by inquiring into whether an individual is a named party to this case. The same is true of UFW and its members, who number in the thousands and live in Los Angeles, Orange, Riverside, Ventura, and San Bernardino Counties. ECF 45-8 ¶ 6. And LAWCN's eight member centers represent thousands of workers in the Greater Los Angeles area. ECF 45-13 ¶¶ 13-22; ECF 45-12 ¶¶ 6-7. Only a District-wide injunction can give adequate relief to those organizations and their members.

Unable to distinguish *Easyriders*, Defendants ignore it and focus on *CASA*. Mot.17-20. But *CASA* and *Easyriders* teach the same lesson: a federal court may order what is necessary to provide the plaintiffs "complete relief," and no more. *See supra* at 19. The district court's order is tailored in just that way, and Defendants have not shown a "strong" likelihood that they will succeed in overturning it on appeal. *Nken*, 556 U.S. at 434.

## II.     The Balance of Equities Does Not Favor a Stay.

Defendants also have failed to make a "clear showing"—or any showing—that they will be irreparably harmed absent a stay, *Winter v. NRDC*, 555 U.S. 7, 21-22 (2008), which is independently fatal to their stay request.  And there is little doubt that Plaintiffs would be substantially injured by a stay, so the equities tip sharply in their favor.  *See Melendres*, 695 F.3d at 1002.[13]

The government is not harmed "in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *see* Stay Order 5.  Defendants argued below that their harm is the presence of unlawful immigrants and infringement of the "President's Article II authority," ECF 71 at 22-23, but as the district court explained, "requiring law enforcement to comply with the Constitution does not prevent law enforcement from enforcing the law."  Order 48.  At the hearing, Defendants presented different theories of harm—*see* ECF 90, Hr. Tr. 71:13-19 (arguing that harm is "engag[ing] in discovery"); *id.* at 75:13-15 (arguing that harm is that Defendants will need "new training" that costs money)—but none was substantiated with evidence.  *See* Order 47-48 & n.36; ECF 90, Hr. Tr. 74:4-7; Stay Order 4-7.

---

[13] Defendants claim that Plaintiffs have other remedies (Mot.21), but Defendants' cited cases say the opposite.  *See Egbert v. Boule*, 596 U.S. 482, 497-98 (2022) (rejecting *Bivens* claim); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1045 (1984) ("institutional" practices are best challenged in federal court).

Defendants have now settled on the argument that the TRO is confusing and therefore "will have a chilling effect on [immigration] enforcement" (Mot.16, 20), but the new declarations that Defendants have offered in support of that assertion are "conclusory and speculative." Stay Order 7. The order is clear. *Id.* at 6-7. Moreover, it has been in place for ten days, and Defendants do not point to *any* evidence that lawful enforcement is being hampered in any way. *Id.* at 6. There is also no meaningful prospect of contempt proceedings (Mot.20), except to the extent that Defendants continue to flout the Constitution's requirements.

Crediting the government's speculative concern about a chilling effect would render virtually all injunctions against a pattern of Fourth Amendment violations improper. Stay Order 7 n.3 ("[a]ny hesitation would appear to flow from the [c]onstitutional requirements of forming reasonable suspicion" and not from "some defect in the TRO Order"). But district courts regularly issue—and this Court regularly affirms—injunctions in Fourth Amendment cases. *See supra* at 16.

Finally, Defendants ask this Court to "nip" any further remedial actions the district court might take "in the bud." Mot.21. But they offer no authority for the novel proposition that merely having to litigate a preliminary-injunction motion constitutes irreparable harm. Defendants remain free to try to convince the district court that a preliminary injunction is not warranted, or that any such injunction should not require additional guidance or documentation. Order 50. Nothing

23

beyond the TRO is a foregone conclusion—which is exactly why the general rule is that TROs are nonappealable, *see East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 754 (9th Cir. 2018); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981).

## CONCLUSION

Defendants' motion for a stay should be denied.

DATED:  July 21, 2025               ACLU OF SOUTHERN CALIFORNIA


By: */s/ Mohammad Tajsar*
Mohammad Tajsar
*Counsel for Plaintiffs-Appellees*


DATED:  July 21, 2025               MUNGER, TOLLES & OLSON LLP


By: */s/ Jacob S. Kreilkamp*
Jacob S. Kreilkamp
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the length limits permitted by Ninth Circuit Rules 27-1(1)(d) and 32-3(2).  Plaintiffs' opposition to Defendants' motion for a stay pending appeal is 5,588 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), which does not exceed the 5,600 words allowed for this document.

2.  This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

DATED:  July 21, 2025                    ACLU OF SOUTHERN CALIFORNIA


By: */s/ Mohammad Tajsar*
Mohammad Tajsar
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the ACMS system, which sent notification of such filing to all registered users.

DATED:  July 21, 2025          ACLU OF SOUTHERN CALIFORNIA


By: */s/ Mohammad Tajsar*
Mohammad Tajsar
*Counsel for Plaintiffs-Appellees*