25-4312

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; and IMMIGRANT DEFENDERS LAW CENTER

*Plaintiffs-Appellees,*

*vs.*

Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California

*Defendants-Appellants.*

Appeal from United States District Court, Central District of California
Hon. Maame Ewusi-Mensah Frimpong
U.S. District Court Case No. 2:25-CV-05605-MEMF-SP

**BRIEF OF THE CITY OF LOS ANGELES, THE COUNTY OF LOS ANGELES, THE CITY OF BELL GARDENS, THE CITY OF BEVERLY HILLS, THE CITY OF CULVER CITY, THE CITY OF HUNTINGTON PARK, THE CITY OF LONG BEACH, THE CITY OF LYNWOOD, THE CITY OF MONTEBELLO, THE CITY OF MONTEREY PARK, THE CITY OF PARAMOUNT, THE CITY OF PASADENA, THE CITY OF PICO RIVERA, THE CITY OF POMONA, THE CITY OF SANTA ANA, THE CITY OF SANTA MONICA, THE CITY OF SOUTH GATE, AND THE CITY OF WEST HOLLYWOOD AS AMICI CURIAE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL**

Hydee Feldstein Soto
Valerie L. Flores
Michael J. Dundas
Maria Louise Cousineau
Randall G. Sommer
Shubhra Shivpuri
**OFFICE OF THE LOS ANGELES CITY ATTORNEY**
City Hall
200 North Spring St., 21st Floor
Los Angeles, CA 90012-4130
hydee.feldsteinsoto@lacity.org
valerie.flores@lacity.org
mike.dundas@lacity.org
maria.cousineau@lacity.org
randall.sommer@lacity.org
shubhra.shivpuri@lacity.org
(213) 922-8382

*Attorneys for City of Los Angeles*

E. Martin Estrada
Daniel B. Levin
John L. Schwab
V. Grace Davis
Wendy Q. Xiao
Jin Niu
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Martin.Estrada@mto.com
Daniel.Levin@mto.com
John.Schwab@mto.com
Grace.DavisFisher@mto.com
Wendy.Xiao@mto.com
Jin.Niu@mto.com
(213) 683-9100

*Attorneys for Cities of Los Angeles, Bell Gardens, Beverly Hills, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Monica, South Gate, and West Hollywood*

Nicole Davis Tinkham
Liliana Campos
Brigit Greeson Álvarez
**OFFICE OF THE LOS ANGELES COUNTY COUNSEL**
648 Kenneth Hahn Hall of Admin.
500 West Temple Street
Los Angeles, CA 90012-2713
ntinkham@counsel.lacounty.gov
lcampos@counsel.lacounty.gov
bgreesonalvarez@counsel.lacounty.gov
(213) 808-8736

*Attorneys for County of Los Angeles*

Michele Beal Bagneris
Arnold F. Lee
**OFFICE OF THE CITY ATTORNEY OF PASADENA**
100 N Garfield Ave., Rm N-210
Pasadena, CA 91101
mbagneris@cityofpasadena.net
aflee@cityofpasadena.net
(626) 744-4141

*Attorneys for City of Pasadena*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION AND STATEMENT OF INTEREST.........................................1

ARGUMENT ........................................................................................................4

I.    Defendants' Unprecedented Immigration Raids Are Unlawful and Not Necessary to Enforce Federal Immigration Laws ...........................................4

    A.    Defendants' Mass Deportation Campaign Exceeds the Bounds of Lawful Immigration Enforcement .....................................................4

    B.    The District Court Correctly Found That A "Mountain of Evidence" Shows Defendants Are Detaining and Arresting People Without Reasonable Suspicion...................................................8

    C.    The District Court Correctly Held That Requiring Defendants to Follow the Constitution Will Not Prevent Defendants from Enforcing Immigration Laws ............................................................10

II.    Defendants' Unlawful Raids Impair Amici's Ability to Maintain Law and Order ......................................................................................................11

III.    Defendants' Terror Campaign Chills Business and Drains Amici's Tax Revenue ...................................................................................................14

IV.    Defendants' Unlawful Enforcement Tactics Prevent Los Angeles County from Protecting Children and the Elderly and Risk Increased Negative Health Consequences for All County Residents...........................17

CONCLUSION ..................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Berger v. New York*,
388 U.S. 41 (1967).........................................................................11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................................................7, 8

*Sanchez v. Sessions*,
904 F.3d 643 (9th Cir. 2018) ...........................................................10

*United States v. Manzo-Jurado*,
457 F.3d 928 (9th Cir. 2006) ...........................................................10

*United States v. Montero-Camargo*,
208 F.3d 1122 (9th Cir. 2000) (en banc) .........................................10

**OTHER AUTHORITIES**

Aaron Rupar, Bluesky (July 11, 2025), https://tinyurl.com/pw3cusdc ................5, 9

Chad de Guzman*, L.A. Mayor Says Trump Administration Is Continuing 'All Out Assault' on City*, Time (July 8, 2025)................16

Dani Anguiano, *US citizen arrested during ICE raid in what family describes as 'kidnapping,'* The Guardian (June 26, 2025)..................6

Daniel Trotta, *US citizen says he was jailed for three days after California immigration raid*, Reuters (July 16, 2025) ..........................6

Hamed Aleaziz & Orlando Mayorquin, *Immigration Arrests in Los Angeles Spike Amid Aggressive Enforcement*, N.Y. Times (July 11, 2025) ...............................................................................................14

Helen Jeong, *Federal agents strike West Hollywood car wash for Fourth of July operation*, NBC Los Angeles (July 4, 2025) .............16

Helen Li & Maanvi Singh, *Troops, terror and tears in Los Angeles as Ice raids show no sign of slowing*, The Guardian (July 13, 2025) ....................15

James Queally, *ICE arrests at L.A. courthouse met with alarm: 'Absolutely blindsided'*, L.A. Times (June 25, 2025) ..........................................14

Jasmine Mendez et al., *Immigration raids continue as Trump appears to soften on targeting some workplaces*, L.A. Times (June 15, 2025) ................................................................................................5

Jennie Taer, *Trump admin's 3,000 ICE arrests per day quota is taking focus off criminals and 'killing morale': insiders*, N.Y. Post (June 17, 2025) ..........................................................................11

Jennifer Medina, *'I'm an American, Bro!': Latinos Report Raids in Which U.S. Citizenship Is Questioned*, N.Y. Times (June 15, 2025) ..................6

Jesus Jimenez et al., *"Completely Disrupted": Fear Upends Life for Latinos in L.A.*, N.Y. Times (June 30, 2025)....................................................15

Jordan Rynning, *Widely-shared video taken in downtown LA shows arrest of man at immigration check-in, ICE says*, LAist (June 25, 2025) ................................................................................................5

Jose Olivares & Will Craft, *ICE arrests of migrants with no criminal history surging under Trump*, The Guardian (June 14, 2025).............................6

Libby Rainey, *LA County is looking into more remote options for health patients in the wake of federal immigration sweeps*, LAist (July 8, 2025) .............................................................................17, 18

Livia Albeck-Ripka & Orlando Mayorquin, *ICE Raids Scare Off L.A. Workers Rebuilding Fire-Torn Areas*, N.Y. Times (July 12, 2025) .................15

Los Angeles Almanac, *Country of Birth of Foreign-Born Population Los Angeles County* ....................................................................13

Martin Kaste, *As courts review military in LA, immigration enforcement accelerates*, NPR (June 19, 2025) ...................................................4

Mayor Karen Bass, *Mayor Bass Responds to Vice President Vance's Lies About Los Angeles* (June 20, 2025) ............................................15

Melissa Goldin, *Trump says he wants to deport 'the worst of the worst.' Government data tells another story*, AP News (July 12, 2025) ................................................................................................6

iii

Melissa Gomez et al., *Heavily armed immigration agents descend on L.A.'s MacArthur Park*, L.A. Times (July 7, 2025) ...............................................7

Michelle Krupa et al., *Tensions are rising in Southern California over immigration raids.  Here's what we know*, CNN (July 13, 2025)......................7

Nathan Solis & Richard Winton, *'Who are these people?' Masked immigration agents challenge local police, sow fear in L.A.*, L.A. Times (June 24, 2025) ...................................................................................12, 13

NBC News, *DHS Secretary Kristi Noem calls California judge an 'idiot' over immigration detention ruling* (July 12, 2025) ...................................3

Sandra Stojanovic, *Immigration officers arrest Iranian asylum-seekers in Los Angeles*, Reuters (June 27, 2025)...................................................5

Travis Schlepp, *ICE agents make arrest at Los Angeles area church*, KTLA 5 (June 11, 2025).........................................................................5

U.S. Immigration and Customs Enforcement, Detention Statistics .........................7

**INTRODUCTION AND STATEMENT OF INTEREST**

Amici Curiae the City of Los Angeles, the County of Los Angeles (the "County"), the City of Bell Gardens, the City of Beverly Hills, the City of Culver City, the City of Huntington Park, the City of Long Beach, the City of Lynwood, the City of Montebello, the City of Monterey Park, the City of Paramount, the City of Pasadena, the City of Pico Rivera, the City of Pomona, the City of Santa Ana, the City of Santa Monica, the City of South Gate, and the City of West Hollywood ("Amici") represent nearly ten million residents of one of the most diverse and vibrant regions in the United States of America.[1]

Amici's residents hail from all over the world and reflect the broad spectrum of racial, ethnic, cultural, and socioeconomic backgrounds that comprise our great nation. The residents of our region have produced remarkable success—with the world's third largest GDP for a metropolitan area, we are home to some of the most innovative businesses in the world, top-rated educational and research institutions, major suppliers for our military, and the two largest shipping ports in the country, fueling economic growth throughout the United States. Amici are

---

[1] No party or party's counsel authored this Brief in whole or in part. No party, party's counsel, or other person contributed money to fund preparation or submission of this brief. All parties to the appeal have consented to Amici's filing of this brief.

1

honored to protect and serve these communities and have forged strong relationships with their peoples.

Over the past few weeks, however, Defendants have sought to destabilize our region through a shock-and-awe campaign of unlawful immigration enforcement. The illegal and dangerous practices Defendants have perpetrated during this campaign are causing chaos in and inflicting terror upon our communities. Amici—the cities and county that the federal government has chosen as its epicenter for immigration raids—have seen their residents terrorized and their resources strained by roving sweeps conducted by masked and heavily armed federal agents who choose targets based on little more than the color of their skin, the languages they speak, and their place of employment.

Defendants' conduct is anything but routine law enforcement. These unprecedented and unconstitutional actions are inflicting irreparable harm that extends beyond those who have been unlawfully arrested, detained, and denied access to counsel. Defendants' immigration raids also impede Amici's ability to maintain law and order and disrupt local economies as business owners close their doors and fearful residents remain in their homes. Defendants' immigration raids also have terrorized residents, causing many to forego leaving their homes to go to work, take public transportation, or access County services, including critical medical care.

2

Defendants have shown no indication of stopping their unlawful assault. Defendant Kristi Noem responded to the District Court's July 11 Temporary Restraining Order with open defiance and disdain for the rule of law, describing the District Court as an "idiot" and declaring that "none of our operations are going to change."[2]  Secretary Noem claimed the raids target "dangerous" and "violent" people who have engaged in "criminal activity."  But the evidence on the ground tells a very different story.  In reality, Defendants are conducting indiscriminate raids that ensnare law-abiding community members—like ice cream vendors, mothers with their children, and people performing grueling and dangerous work, including in areas devastated by recent fires—in an effort to hit arbitrary arrest quotas imposed by the administration.

Defendants' raids have ripped through churches, swap meets, parks, homes, and baseball games, sweeping in U.S. citizens and non-citizens alike and tearing at the fabric of Amici's communities.  Amici have a compelling interest in seeing Defendants' unlawful actions stopped, not only to protect their residents, but also to maintain proper law and order within their borders, ensure continued access to

---

[2] NBC News, *DHS Secretary Kristi Noem calls California judge an 'idiot' over immigration detention ruling* (July 12, 2025), https://www.youtube.com/shorts/8iuX7hhiJMc.

healthcare and public benefits, and safeguard vital tax revenues that support public services for all.[3]

## ARGUMENT

### I.    Defendants' Unprecedented Immigration Raids Are Unlawful and Not Necessary to Enforce Federal Immigration Laws

#### A.    Defendants' Mass Deportation Campaign Exceeds the Bounds of Lawful Immigration Enforcement

In recent weeks, Defendants have carried out increasingly aggressive and unlawful immigration raids targeting communities throughout the Los Angeles area. Masked federal agents who refuse to identify themselves are stopping, arresting, and detaining people all over the County based solely on their appearance, capturing both U.S. citizens and noncitizens. Community leaders who have witnessed Defendants' operations have described them as "kidnapp[ings]" and "disappear[ances]" evocative of "a totalitarian regime."[4]

Eyewitness accounts reveal a disturbing pattern of racial profiling. As one observer described, "They don't care if you have papers, as long as you look like

---

[3] Amici the City of Los Angeles, the County of Los Angeles, the City of Culver City, the City of Montebello, the City of Monterey Park, the City of Pasadena, the City of Pico Rivera, the City of Santa Monica, and the City of West Hollywood also have filed a motion to intervene in the District Court to protect their interests in this matter. Dist. Ct. Dkt. 61. That motion remains pending.

[4] Martin Kaste, *As courts review military in LA, immigration enforcement accelerates*, NPR (June 19, 2025), https://www.npr.org/2025/06/19/g-s1-73569/as-courts-review-military-in-l-a-immigration-enforcement-accelerates.

what they want you to look like, they'll take you."[5]  A witness to another raid

similarly recounted that "if you looked Hispanic in any way, they just took you."[6]

This is not surprising—federal officials have admitted their profiling practices.

*See* Aaron Rupar, Bluesky (July 11, 2025), https://tinyurl.com/pw3cusdc ("Border

Czar" Tom Homan asserting that federal agents may detain individuals based on

"the location, their occupation, their physical appearance, their accent").

Defendants' raids are not limited to people who appear Latino.  To name just

two examples, Defendants recently detained an Iranian couple with a 3-year-old

child seeking asylum from religious persecution at a "routine immigration

appointment" and arrested a Chinese man at an immigration check-in meeting.[7]

Defendants' pattern of arresting people merely because they appear to be

immigrants also reaches U.S. citizens.  In one recent example, immigration officers

---

[5] Travis Schlepp, *ICE agents make arrest at Los Angeles area church*, KTLA 5
(June 11, 2025), https://ktla.com/news/local-news/ice-agents-make-arrest-at-los-
angeles-area-church/#:~:text=Community%20members%20and%20religious%
20leaders,in%20the%20church%20parking%20lot.

[6] Jasmine Mendez et al., *Immigration raids continue as Trump appears to soften on
targeting some workplaces*, L.A. Times (June 15, 2025), https://www.latimes.com
/california/story/2025-06-15/los-angeles-immigration-raids-continue.

[7] Sandra Stojanovic, *Immigration officers arrest Iranian asylum-seekers in Los
Angeles*, Reuters (June 27, 2025), https://www.reuters.com/world/us/immigration-
officers-arrest-iranian-asylum-seekers-los-angeles-2025-06-27/; Jordan Rynning,
*Widely-shared video taken in downtown LA shows arrest of man at immigration
check-in, ICE says*, LAist (June 25, 2025), https://laist.com/news/video-shows-
man-arrested-at-immigration-check-in-ice-says.

violently arrested a U.S. citizen and Army veteran—spraying him with pepper spray and kneeling on his neck and back—and then held him in custody for three days without offering any explanation for his arrest.[8]  Defendants arrested U.S. citizen Andrea Velez during another raid, forcibly "lifting [her] off the ground and carrying her away" without explanation; Ms. Velez's only apparent offense was "the color of her skin."[9]  Yet another encounter, shared on social media, showed an ICE agent repeatedly asking Plaintiff Brian Gavidia, a U.S. citizen: "What hospital were you born at?" while detaining him.[10]

Defendants' claim that their raids target only "dangerous" criminals contradicts their own data.  According to the latest ICE statistics, approximately 72% of the people ICE detained as of June 28, 2025 had no criminal convictions.[11]

[8] Daniel Trotta, *US citizen says he was jailed for three days after California immigration raid*, Reuters (July 16, 2025), https://www.reuters.com/legal/government/us-citizen-says-he-was-jailed-three-days-after-california-immigration-raid-2025-07-17.

[9] Dani Anguiano, *US citizen arrested during ICE raid in what family describes as 'kidnapping,'* The Guardian (June 26, 2025), https://www.theguardian.com/us-news/2025/jun/26/immigration-ice-raid-andrea-velez.

[10] Jennifer Medina, *'I'm an American, Bro!': Latinos Report Raids in Which U.S. Citizenship Is Questioned*, N.Y. Times (June 15, 2025), https://www.nytimes.com/2025/06/15/us/hispanic-americans-raids-citizenship.html.

[11] Melissa Goldin, *Trump says he wants to deport 'the worst of the worst.' Government data tells another story*, AP News (July 12, 2025), https://apnews.com/article/fact-check-trump-immigration-crime-ice-criminal-dangerous-violent-99557d9d68642004193a9f4b7668162e; Jose Olivares & Will Craft, *ICE arrests of migrants with no criminal history surging under Trump*, The Guardian (June 14, 2025), https://www.theguardian.com/us-news/2025/jun/14/ice-arrests-migrants-

Defendants have shown no intention of stopping. Defendants' agents recently marched through MacArthur Park in tactical gear, including past a playground filled with children at a summer day camp.[12] Defendant Gregory Bovino suggested Defendants "may well go back to MacArthur Park or other places in and around Los Angeles," as "[i]llegal aliens had the opportunity to self deport, now we'll help things along a bit."[13] And, as noted, Defendant Noem publicly referred to the District Court as "an idiot" and affirmed that "none of our operations are going to change" despite the entry of the TRO. *See* n.2 *supra*.

Defendants claim Plaintiffs lack standing to challenge their precedent-smashing immigration raids because Plaintiffs are not "likely to suffer future injury" at Defendants' hands. Mot. for Stay at 7–8 (relying on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). But the breathtaking scope, scale, and aggression of Defendants' actions immediately distinguish this case from *Lyons*. In that case, police officers stopped plaintiff Lyons for a traffic violation and placed him in a

---

trump-figures; U.S. Immigration and Customs Enforcement, Detention Statistics, https://www.ice.gov/detain/detention-management#:~:text=Detention%20 Statistics.

[12] Michelle Krupa et al., *Tensions are rising in Southern California over immigration raids. Here's what we know*, CNN (July 13, 2025), https://www.cnn.com/2025/07/11/us/california-immigration-raids-la-wwk.

[13] *See* Melissa Gomez et al., *Heavily armed immigration agents descend on L.A.'s MacArthur Park*, L.A. Times (July 7, 2025), https://www.latimes.com/california/ story/2025-07-07/immigration-agents-descend-on-macarthur-park.

chokehold. *Lyons*, 461 U.S. at 97. The Court held Lyons lacked standing to seek prospective relief because he did not establish an "immediate threat" of being illegally stopped or choked again. *Id.* at 105. Here, in contrast, the evidence reflects not only an "immediate threat" that Defendants' unlawful conduct might continue, but that Defendants' conduct is *already continuing*—and that every person in the Los Angeles area whom Defendants might perceive as "looking" like an immigrant, regardless of their legal status, has reason to fear Defendants' raids. Defendants' sweeping campaign of illegal immigration raids is not a mere one-off. Indeed, it is likely Defendants will stop the individual Plaintiffs again, as Defendants are conducting repeat enforcement raids at the same locations and Defendants have admitted that they have no intention of stopping. *See* nn.2, 12, 13, *supra*.

### B. The District Court Correctly Found That A "Mountain of Evidence" Shows Defendants Are Detaining and Arresting People Without Reasonable Suspicion

As the District Court correctly held, the Fourth Amendment prohibits Defendants from basing a finding of reasonable suspicion exclusively on a person's (1) apparent "race or ethnicity"; (2) "[s]peaking Spanish or speaking English with an accent"; (3) "[p]resence at a particular location"; or (4) "type of work." Dist. Ct. Order Granting TRO ("TRO Order"), Dist. Ct. Dkt. 87 at 50; *see*

*also id.* at 39 ("reliance solely upon the four enumerated factors either alone or in combination does not meet the requirements of the Fourth Amendment").

Defendants claim they consider these factors as part of the "totality of the circumstances," Mot. for Stay at 15, but the overwhelming evidence paints a different picture. Countless videos and eyewitness accounts confirm that Defendants are targeting Amici's residents at places like Home Depot stores, car washes, swap meets, and churches based primarily on their appearance. *See* nn.5, 13, 21, 26; *see also* TRO Order at 2 (acknowledging a "mountain of evidence" that Defendants are conducting "[r]oving patrols . . . without reasonable suspicion"). If Defendants' raids were actually based on reasonable suspicion, Defendants would not be detaining or arresting U.S. citizens or people with legal status at all—much less in the numbers seen over the past month. But they are. *See* nn.8–10, *supra*.

Indeed, to the extent any doubt existed about immigration agents' unlawful actions, "Border Czar" Tom Homan recently asserted that "ICE officers and Border Patrol, they don't need probable cause to walk up to somebody, briefly detain them, and question them . . . based on *the location*, *their occupation, their physical appearance, their accent*."[14] But this Court has unequivocally held that "race and ethnicity alone can never serve as the basis for reasonable suspicion."

---

[14] Aaron Rupar, Bluesky (July 11, 2025), https://tinyurl.com/pw3cusdc (emphasis added).

9

*Sanchez v. Sessions*, 904 F.3d 643, 656 (9th Cir. 2018); *see also United States v. Montero-Camargo*, 208 F.3d 1122, 1135 (9th Cir. 2000) (en banc) ("Hispanic appearance is, in general, of such little probative value that it may not be considered as a relevant factor where particularized or individualized suspicion is required."); *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006) ("[T]o establish reasonable suspicion, an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population."); *id*. at 937 ("By itself . . . an individual's inability to understand English will not justify an investigatory stop because the same characteristic applies to a sizeable portion of individuals lawfully present in this country.").  It is clear that Defendants' sweeping raids violate the Fourth Amendment.

### C.    The District Court Correctly Held That Requiring Defendants to Follow the Constitution Will Not Prevent Defendants from Enforcing Immigration Laws

Defendants claim that the District Court's Order is "preventing" them "from ensuring that immigration laws are enforced."  Mot. for Stay at p. ii.  This is absurd.

For more than 70 years prior to June 6, immigration enforcement in the Los Angeles area consisted primarily of targeted arrests, often pursuant to warrants, naming identified individuals for specified reasons.  But Defendants have turned

10

the past on its head by abandoning adherence to constitutional rights in favor of indiscriminate arrests aimed at hitting arbitrary arrest quotas.[15]

The law does not permit Defendants to sidestep the Fourth Amendment because it is inconvenient. *Berger v. New York*, 388 U.S. 41, 62 (1967) ("[W]e cannot forgive the requirements of the Fourth Amendment in the name of law enforcement."). All law enforcement agencies—including Amici's own—are bound by the Fourth Amendment's requirement that stops be supported by particularized reasonable suspicion. Adhering to that constitutional standard does not stop law enforcement from carrying out their duties; nor does it inflict irreparable harm warranting a stay. Put simply, history and common sense make clear that complying with their legal obligations does not prevent Defendants from enforcing immigration laws.

## II. Defendants' Unlawful Raids Impair Amici's Ability to Maintain Law and Order

Defendants' unwarranted and unlawful actions have severely impacted the ordinary functioning of Los Angeles communities, with serious consequences for Amici's ability to maintain law and order. Masked, armed, and often unidentified federal agents are carrying out warrantless raids and detaining and arresting

---

[15] Jennie Taer, *Trump admin's 3,000 ICE arrests per day quota is taking focus off criminals and 'killing morale': insiders*, N.Y. Post (June 17, 2025), https://nypost.com/2025/06/17/us-news/trump-admins-3000-ice-arrests-per-day-quota-is-taking-focus-off-criminals-and-killing-morale-insiders/.

residents without probable cause, all without any notice to local law enforcement. Amici's law enforcement officers are thus forced to divert their limited resources to determine whether armed individuals exiting unmarked vehicles are masked, unidentified federal agents—or masked, unidentified criminals.[16]  And when the federal agents are gone, law enforcement is left to "deal with the aftermath" of raids, "including protests and questions from residents about what exactly happened."[17]

Handling this aftermath comes at great cost to Amici.  The Los Angeles Police Department spent almost $30 million in the month following June 6, 2025, to respond to and manage the fallout from the federal immigration raids.  The Los Angeles County Sheriff's Department incurred another $9 million in additional costs.  And the raids diverted high-ranking city and county personnel, including the Montebello Police Chief, from their primary duties to handle initiatives aimed at easing community fears.

Defendants' unlawful targeting of people who appear to be immigrants is especially harmful in a place like Los Angeles County, which boasts one of the

---

[16] Nathan Solis & Richard Winton, *'Who are these people?' Masked immigration agents challenge local police, sow fear in L.A.*, L.A. Times (June 24, 2025), https://www.latimes.com/california/story/2025-06-24/masked-immigration-agents-local-law-enforcement-tension.

[17] *See* Solis, n.16 *supra*.

largest immigrant populations in the world. One out of every three Los Angeles County residents was born in another country. The County is home to the largest communities in the U.S. of people claiming Mexican, Guatemalan, Korean, Filipino, Armenian, and Salvadoran descent, and the largest concentrations of U.S. residents born in Iran, Taiwan, Japan, Canada, Cambodia, Thailand, Lebanon, Belize, Indonesia, Syria, Myanmar, Sri Lanka, South Africa, The Netherlands, Sweden, Saudi Arabia, Fiji, New Zealand and Kuwait.[18] Over 4.8 million County residents—nearly 49%—identify as Hispanic or Latino. Another 15% of the County identifies as Asian. Bell Gardens, Huntington Park, and Pico Rivera are more than 90% Hispanic or Latino. Monterey Park is approximately 65% Asian.

The trust and relationships that Amici and local law enforcement agencies have built with local communities, and these immigrant communities in particular, have been deeply undermined by Defendants' unlawful raids, especially when impacted residents confuse the unlawful conduct of Defendants' agents with the conduct of local first responders.[19] Protestors and people subject to Defendants' unlawful raids have mistaken not only Amici's police officers, but also social workers, firefighters, and building inspectors, for federal agents and have

---

[18] *See* Los Angeles Almanac, *Country of Birth of Foreign-Born Population Los Angeles County*, https://www.laalmanac.com/population/po22b.php.

[19] *See* Solis, n.16 *supra*.

confronted them with accusations, threats, and non-cooperation. And state prosecutors have reported "having to drop cases" because undocumented immigrant witnesses are afraid to appear in state courthouses, which Defendants are using as staging grounds for federal immigration enforcement.[20]

The only way to mitigate these harms is to halt Defendants' unlawful immigration enforcement campaign. Granting Defendants' Motion for Stay would allow these actions to continue unchecked and would compound the irreparable harm to public safety in Amici's jurisdictions.

## III. Defendants' Terror Campaign Chills Business and Drains Amici's Tax Revenue

Defendants' unlawful actions also have chilled commerce and activity in Los Angeles-area neighborhoods. Many "once vibrant" communities have seen "sidewalks and parks empty out," with "open barber chairs," "empty restaurant booths," and "eerily spacious" church pews in Latino communities during Sunday mass.[21] Business owners have described the situation as worse than during the

---

[20] James Queally, *ICE arrests at L.A. courthouse met with alarm: 'Absolutely blindsided'*, L.A. Times (June 25, 2025), https://www.latimes.com/california/story/2025-06-25/ice-arrests-los-angeles-courthouse.

[21] Hamed Aleaziz & Orlando Mayorquin, *Immigration Arrests in Los Angeles Spike Amid Aggressive Enforcement*, N.Y. Times (July 11, 2025), https://www.nytimes.com/2025/07/11/us/politics/los-angeles-immigration-enforcement.html.

Covid-19 pandemic.[22]  Amici's residents—including U.S. citizens—choose to stay

at home for fear of "being swept up in the raids" simply because of their perceived

race or ethnicity.[23]  As Los Angeles Mayor Karen Bass lamented, businesses are

"empty" because workers are "too afraid to come into work," and customers "feel

they can't go outside of their house."[24]  Defendants' actions have also impeded

efforts to rebuild after the 2025 Southern California wildfires, with many workers

and subcontractors—regardless of their legal status—opting to stay home for fear

of being swept up in Defendants' unlawful immigration raids.[25]

     Defendants' unlawful actions and the resulting lockdown have caused

serious economic harm to Amici, including critical losses of business and sales tax

revenue.  For example, approximately 12.5% of the City of Los Angeles' annual

budget for the past two years has relied on business and sales taxes.  Those taxes

---

[22] Helen Li & Maanvi Singh, *Troops, terror and tears in Los Angeles as Ice raids show no sign of slowing*, The Guardian (July 13, 2025), https://www.theguardian.com/us-news/2025/jul/13/los-angeles-ice-raids-terror.

[23] Jesus Jimenez et al., *"Completely Disrupted": Fear Upends Life for Latinos in L.A.*, N.Y. Times (June 30, 2025), https://www.nytimes.com/2025/06/30/us/latinos-los-angeles-immigration.html.

[24] Mayor Karen Bass, *Mayor Bass Responds to Vice President Vance's Lies About Los Angeles* (June 20, 2025), https://mayor.lacity.gov/news/mayor-bass-responds-vice-president-vances-lies-about-los-angeles.

[25] Livia Albeck-Ripka & Orlando Mayorquin, *ICE Raids Scare Off L.A. Workers Rebuilding Fire-Torn Areas*, N.Y. Times (July 12, 2025), https://www.nytimes.com/2025/07/12/us/ice-raid-altadena-palisades-rebuilding.html.

are typically based on gross receipts from businesses, including many, like clothing wholesalers, taco stands, and car washes, that have been targeted by the recent federal raids.[26] Empty businesses do not generate gross receipts—and thus do not pay business taxes to Amici.

The chilling effect of Defendants' unlawful actions reaches well beyond small businesses. For example, Culver City's Westfield Mall—a major regional shopping destination and a significant contributor to the city's tax revenue—experienced a sharp decline in visits across all hours of the day during the week of June 23, 2025, coinciding with the surge in federal immigration raids. Similarly, premier tourism hubs like Beverly Hills, Santa Monica, and West Hollywood have seen a marked drop in international arrivals as Defendants' raids deter would-be visitors. Unsurprisingly, hotels are reporting lower occupancy rates, and local businesses are seeing a measurable decline in visitor spending. The only way to mitigate the resulting economic harm to Amici—including significant reductions in vital tax revenues—is to bring Defendants' unlawful conduct to an end.

---

[26] *See, e.g.*, Chad de Guzman*, L.A. Mayor Says Trump Administration Is Continuing 'All Out Assault' on City*, Time (July 8, 2025), https://time.com/ 7300803/los-angeles-ice-raids-macarthur-park-national-guard-bass-trump; Helen Jeong, *Federal agents strike West Hollywood car wash for Fourth of July operation*, NBC Los Angeles (July 4, 2025), https://www.nbclosangeles.com /news/local/federal-agents-strike-west-hollywood-car-wash-for-fourth-of-july-operation/3738879.

**IV.    Defendants' Unlawful Enforcement Tactics Prevent Los Angeles County from Protecting Children and the Elderly and Risk Increased Negative Health Consequences for All County Residents**

Los Angeles County delivers a range of essential public services to its residents, including healthcare, public safety, public assistance, workforce development, foster care, child support, housing and emergency management. Defendants' unlawful immigration tactics have severely undermined the County's ability to provide these critical services.

Widespread fear of Defendants' immigration raids has disrupted the work of County departments, including the Department of Children and Family Services and Department of Aging & Disabilities.  Social workers now face significant barriers in reaching and assisting the County's most vulnerable populations: children and the elderly.

Defendants' unlawful enforcement actions also carry grave public health consequences.  The County's Department of Health Services reported a more than 10% increase in patient no-shows for scheduled hospital appointments in June 2025 alone, a clear sign that fear is deterring people from seeking medical care.[27] The County also has seen a steady decrease in emergency room and urgent care

---

[27] *See* Libby Rainey, *LA County is looking into more remote options for health patients in the wake of federal immigration sweeps*, LAist (July 8, 2025), https://laist.com/news/health/no-shows-and-cancellations-are-up-at-some-hospitals-clinics-up-since-immigration-action-began.

visits, suggesting that even those with the most pressing health concerns are foregoing medical services.[28]  When residents delay or avoid care, minor health issues can escalate into severe conditions, placing additional burdens on families, communities, and the healthcare system as a whole.  The cumulative effect of these avoidable health crises threatens public health and jeopardizes the stability of a healthcare safety net that is already under threat.  These harms will only escalate unless Defendants' reckless and illegal immigration raids are brought to an end.

## CONCLUSION

For the reasons stated herein, Amici urge this Court to deny Defendants' Emergency Motion for Stay.

---

[28] *Id.*

Dated: July 21, 2025

*/s/ E. Martin Estrada*
E. Martin Estrada
Daniel B. Levin
John L. Schwab
V. Grace Davis
Wendy Q. Xiao
Jin Niu
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Martin.Estrada@mto.com
Daniel.Levin@mto.com
John.Schwab@mto.com
Grace.DavisFisher@mto.com
Wendy.Xiao@mto.com
Jin.Niu@mto.com
(213) 683-9100

*Attorneys for Cities of Los Angeles, Bell Gardens, Beverly Hills, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Monica, South Gate, and West Hollywood*

19

Hydee Feldstein Soto
Valerie L. Flores
Michael J. Dundas
Maria Louise Cousineau
Randall G. Sommer
Shubhra Shivpuri
**OFFICE OF THE LOS ANGELES
CITY ATTORNEY**
City Hall
200 North Spring Street, 21st Floor
Los Angeles, CA 90012-4130
hydee.feldsteinsoto@lacity.org
valerie.flores@lacity.org
mike.dundas@lacity.org
maria.cousineau@lacity.org
randall.sommer@lacity.org
shubhra.shivpuri@lacity.org
(213) 922-8382

*Attorneys for City of Los Angeles*

Nicole Davis Tinkham
Liliana Campos
Brigit Greeson Alvarez
**OFFICE OF THE LOS ANGELES
COUNTY COUNSEL**
648 Kenneth Hahn Hall of Admin.
500 West Temple Street
Los Angeles, CA 90012-2713
ntinkham@counsel.lacounty.gov
lcampos@counsel.lacounty.gov
bgreesonalvarez@counsel.lacounty.gov
(213) 808-8736

*Attorneys for County of Los Angeles*

Michele Beal Bagneris
Arnold F. Lee
**OFFICE OF THE CITY ATTORNEY**
**OF PASADENA**
100 N Garfield Ave., Rm N-210
Pasadena, CA 91101
mbagneris@cityofpasadena.net
aflee@cityofpasadena.net
(626) 744-4141

*Attorneys for City of Pasadena*

## **ATTESTATION**

Pursuant to Circuit Rule 25-5(f), the undersigned attests that all other parties on whose behalf this filing is submitted concur in the filing's content and have authorized the filing.


DATED:  July 21, 2025


By:     _/s/ E. Martin Estrada_
        E. MARTIN ESTRADA
        MUNGER, TOLLES & OLSON LLP

        *Attorneys for Cities of Los Angeles, Bell Gardens, Beverly Hills, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Monica, South Gate, and West Hollywood*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-4312

I am the attorney or self-represented party.

**This brief contains** | 3,763 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Martin Estrada | **Date** | July 21, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*